## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:17-CV-00466-GCM

| | | |
|---|---|---|
| **CLAUDIA E. POLANCO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | <u>**ORDER**</u> |
| | ) | |
| **HSBC BANK USA NATIONAL** | ) | |
| **ASSOCIATION CHRISTIANA TRUST** | | |
| **PHH MORTGAGE CORPORATION** | | |
| **KNOXVILLE 2012 TRUST 21ST** | | |
| **MORTGAGE CORPORATION,** | | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

      **THIS MATTER COMES** before this Court on Defendants' Motion to Dismiss Counts Two through Thirteen of the Amended Complaint. (Doc. No. 34). Plaintiff responded to the Motion (Doc. No. 40) to which Defendants replied. (Doc. No. 42). As such, this matter is ripe for disposition.

## I.    FACTUAL BACKGROUND

      The alleged facts relevant to this Motion are as follows. Plaintiff's husband obtained a loan from Defendant HSBC to purchase a home in 2007. (Am. Compl. ¶ 20). In 2013, Plaintiff's husband executed a quitclaim deed in favor of Plaintiff. (*Id.* ¶ 21). Plaintiff entered into a Loan Modification Agreement ("LMA") with Defendants concerning that loan on November 5, 2015. (*Id.* ¶ 22). The amount outstanding on the loan at the time of the LMA was $222,108.21. (*Id.* ¶ 23). The LMA adjusted the interest rate on the loan to 4.000% with the loan amortized over thirty-seven years and six months. (*Id.*). In addition to the monthly payment on the loan, the promissory note required the borrower (Plaintiff's husband) to pay into escrow an amount to cover the annual

taxes and homeowner's insurance. (*Id.* ¶ 24). All associated monthly payments totaled $1,493.46. (*Id.* ¶ 25).

Defendant HSBC provided the original loan. (*Id.* ¶ 20). Defendant PHH serviced the loan and facilitated the LMA between HSBC and Plaintiff. (*Id.* ¶ 26- 27). Pursuant to the LMA, Plaintiff made her monthly payments of $1,493.46 each month starting in November of 2015. (*Id.* ¶ 29). In December of 2015, Plaintiff began recognizing errors in her mortgage statements. (*Id.* ¶ 30). Plaintiff started writing and calling Defendants to alert them of the errors. (*Id.* ¶ 31). Plaintiff attempted to communicate with Defendants over a dozen times. (*Id.* ¶ 32).

The account statements that Defendants sent Plaintiff showed that Plaintiff was not making her monthly payments despite the fact that she had made those payments every month after the LMA. (*Id.* ¶ 33, 29). Because the statements showed she was not making her payments, Plaintiff's arrearage continued to increase. (*Id.* ¶34). As a result of the arrearage increasing, Defendants threatened to foreclose on Plaintiff's home. (*Id.* ¶ 38). On October 13, 2016, Plaintiff received a letter from Defendant PHH that indicated Defendants would foreclose on Plaintiff's home unless Plaintiff paid the sum of $20,001.73 on or before November 27, 2016. (*Id.* ¶ 39).

On January 9, 2017, Plaintiff filed a complaint with the North Carolina Attorney General's Office ("AG's Office"). (*Id.* ¶ 45). On January 18, 2017, the AG's Office notified Defendants that the AG's Office was investigating Plaintiff's situation. (*Id.* ¶ 46). Even with the AG's Office investigating the situation, Defendants sent Plaintiff a notice in February of 2017 stating that Plaintiff's loan had been accelerated and the entire $241,598.95 sum was due to prevent foreclosure. (*Id.* ¶ 48). Defendants ultimately initiated foreclosure proceedings against Plaintiff on February 27, 2017. (*Id.* ¶ 50).

On March 8, 2017, Defendant HSBC acknowledged in a letter to the AG's Office that mistakes had been made on Plaintiff's account. (*Id.* ¶ 68). Defendant HSBC provided the following explanation for the errors on Plaintiff's account and the ultimate foreclosure proceedings on her home.

> The loan was approved for a loan modification effective for the November 1, 2015 payment. However, the investor guidelines for the investor of the loan, 21st Century Mortgage Corporation, did not allow any amounts to be capitalized into the loan that would increase the outstanding principal balance, including the escrow advance, and at the time the modification was approved, the escrow advance totaled $17,709.75. This amount was reflected due on the loan modification documents as a "modification transaction cost" because it could not be capitalized.
>
> At the time the loan was modified, the most recent escrow analysis had been performed on January 20, 2015; however, after the loan modification was complete, another escrow analysis should have been performed and the $17,709.75 escrow advance referenced in the loan modification spread over a period of 12 months. Unfortunately, it appears that certain coding on the account in connection with the loan modification was not removed from the account in a timely manner, which prevented the account from being analyzed. Additionally, that same coding resulted in payments received from November 1, 2015 to September 2016, in the amount of $18,542.38 being placed in suspense. The payments remained in suspense until September 16, 2016, when the payments were applied to the account as follows:
>
> > $17,709.95-Applied to the escrow shortage;
> > $1,954.12-Applied to the November 1, 2015 payment; and
> > $1,315.59-Remaining suspense balance.
>
> Because the account was reflected as due for the December 1, 2015 payment, the suspense balance of $1,315.59 was returned to the property address on October 10, 2016, and the loan was referred to foreclosure counsel, Shapiro & Ingle, to initiate foreclosing proceedings on December 22, 2016.

(*Id.* at ¶ 69).

After communication with Plaintiff, HSBC investigated the account and realized its mistake. Ultimately, Defendant HSBC stated to the AG's Office that Defendant HSBC would take the following remedial measures:

> PHHMC will be correcting the account by reversing the September 16, 2016 application of $17,709.95 to the escrow advance, and will instead be applying that amount to the account as monthly payments in the amount of $1,804.94. This will bring the account due for December 1, 2016 PHHMC will also be waiving the $17,709.95 escrow advance, any foreclosure fees and cost incurred since the November 1, 2015 loan modification, and the 4 monthly payments due for December 1, 2016 to March 1, 2017 payments. After the payments are reversed and re-applied to the account, the loan will be current and due for the April 1, 2017 payment. PHHMC will also perform an escrow analysis, and any remaining escrow shortage will be spread over a period of 60 months.

(*Id.*).

In April of 2017, Plaintiff sent her payment of $1,493.46 as required under the LMA and the letter sent from Defendant HSBC to the AG's Office. However, when Plaintiff received her April statement, her account showed that she owed $2,880.77: $1,493.46 of regular payments, $632.85 in shortage, and $723.46 in expenses. These extra expenses constituted fees assessed to Plaintiff's account for default-related services. (*Id.* ¶ 103).

On May 12, 2017, Plaintiff received a letter from Defendants stating that Plaintiff's account was two payments past due despite the fact that she made both the April and May payments. As of May 16, 2017, Plaintiff's account showed a negative escrow balance of $7,001.14 with a suspense balance of $2,986.92. Both the May and June statements showed a late charge fee, returned item charge, shortages, and other fees of $643.05. The May 16, 2017 statement further required Plaintiff to remit a sum of $5,395.64 by June 1, 2017 to avoid foreclosure. Plaintiff managed to pay the sum prior to June 1, 2017; however, Plaintiff still is unaware of how those

payments were applied to her account. (*Id.* ¶ 122). Defendants' actions allegedly caused Plaintiff to suffer from severe mental anguish including depression, anxiety, and sleeplessness. (*Id.* ¶ 43).

As a result of the above alleged actions, Plaintiff sued Defendants in a thirteen count Amended Complaint. Defendants moved to dismiss Counts Two through Thirteen. Each Count will be discussed below.

## II.    STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.   DISCUSSION

### a.  Tort Claims

First, Defendants argued that Plaintiff's tort claims should be dismissed as the only appropriate claim in this case is one for breach of contract. In North Carolina, a tort

> does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract.

*Rountree v. Chowan Cty.*, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017). Contract law, rather than tort law, provides proper redress in those situations. *Id.* In order to state a tort claim based upon the actions surrounding the performance of a contract, a plaintiff must state a claim that is "identifiable and distinct from the primary breach of contract claim." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998) (internal citations omitted). "To pursue a tort claim and a breach of contract claim concerning the same conduct, a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Kelly v. Georgia-Pacific, LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (internal citations and quotations omitted).

Defendants argued in their Motion that Plaintiff has pled only a breach of contract and not a separate and distinct duty owed to her. Plaintiff in response argues that North Carolina law, specifically the North Carolina SAFE Act, provides a separate and distinct duty that supports her tort actions. The North Carolina Secure and Fair Enforcement Mortgage Licensing Act ("SAFE Act") states the following: "Any mortgage servicer engaged in the mortgage business as defined by G.S. 53-244.030(11)c., in addition to duties imposed by other statutes or at common law, shall do all of the following: . . . (3) Act with reasonable skill, care, and diligence." N.C. Gen. Stat. §53-244.110 (3). Thus, the question before the Court is whether the language of the SAFE Act provides a duty upon which Plaintiff may premise her tort claims.

A review of North Carolina case law shows that the North Carolina courts have declined to determine if the SAFE Act gives rise to a legal duty sufficient to support a negligence claim. *See Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 254 (N.C. Ct. App. 2018) ("Even assuming—without deciding—that the SAFE Act can serve as the source of a legal duty owed by a lender to a borrower in the residential loan context. . ..."). Without controlling authority, this

Court is left to predict what the North Carolina Supreme Court would decide if presented the issue. *Private Mortg. Inv. Servs., Inc. v. Hotel and Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002).

The Court finds the North Carolina SAFE Act provides a sufficient legal duty upon which Plaintiff can maintain her tort causes of action. The North Carolina legislature chose to use the word "duties" in the text of the statute. N.C. Gen. Stat. §53-244.110 (3). It is axiomatic in statutory interpretation that each word is to be given meaning and effect. Following the canon of *verba cum effectu sunt accipienda*, the North Carolina legislature is presumed to have intended the word "duties" be given effect and meaning. In order to give the word its appropriate meaning, the Court feels bound to find that the SAFE Act does create a legal duty upon which a tort suit can stand. Therefore, Defendants' Motion to Dismiss the tort claims on the basis that the claims are not sufficiently independent and distinct from the contract claim is **DENIED**.

### b. Vicarious Liability for 21st Mortgage, Christiana Trust, and HSBC

Defendants next argue that Defendants 21st Mortgage, Christiana Trust and HSBC should be dismissed as Plaintiff failed to adequately plead causes of action against them. Plaintiff argued strenuously in response that Defendant PHH is an agent of Defendant HSBC giving rise to vicariously liability for Defendant HSBC. Plaintiff also argues that she has sufficiently stated a claim directly against all Defendants.

As an initial matter, Plaintiff's response brief contains no specific argument that she has stated a plausible claim against Defendants 21st Mortgage and Christiana Trust. Rather, Plaintiff made a conclusory statement that "Plaintiff's claims are against all Defendants collectively and are not dependent upon an agency relationship since each Defendant would be liable for its own actions if Plaintiff's allegations are proven true." (Doc. 40, p. 9). The Court finds this argument and the associated Amended Complaint insufficient to state a plausible claim against 21st Mortgage

and Christiana Trust. While Plaintiff refers to "Defendants" generally throughout the Amended Complaint after defining the term to include Defendants 21st Mortgage and Christiana Trust, Plaintiff never alleges those Defendants' specific role within the claims alleged. This is in stark contrast to the specific factual allegations against Defendants HSBC and PHH. As such, Plaintiff has failed to allege a plausible claim against Defendants 21st Mortgage and Christiana Trust under either a direct liability or agency theory. Therefore, the Court **GRANTS** Defendants' Motion as to Defendants 21st Mortgage and Christiana Trust.

As to Defendants HSBC and PHH, Defendants' Motion is **DENIED**. In addition to alleging that "Defendants" performed the acts alleged, Plaintiff's Amended Complaint specifically lists actions of HSBC and PHH. (*See, e.g.*, Am. Compl. ¶s 20, 26, 28, 39, 47, 65, 68, 69, 71, 74, 76, 77, 78). At this stage in the proceedings, Plaintiff need only allege plausible claims against the Defendants to withstand a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The Court finds that Plaintiff's Amended Complaint contains sufficient factual matter to state plausible claims of relief as outlined below. Thus, Defendants' blanket Motion to Dismiss Defendant HSBC from this case is **DENIED**.

### c. Intentional Infliction of Emotional Distress

Defendants next moved to dismiss Plaintiff's claim for intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress in North Carolina, a plaintiff must plead "(1) extreme and outrageous conduct by the defendant, (2) which is intended to and does in fact cause, (3) severe emotional distress." *Holloway v. Wachovia Bank & Trust Co., N.A.*, 452 S.E.2d 233, 240 (N.C. 1994) (citing *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981)). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community.'" *Guthrie v. Conroy*, 567 S.E.2d 403, 408-09 (N.C. App. Ct. 2002) (quoting *Briggs v. Rosenthal*, 327 S.E.2d 308, 311, *cert. denied*, 322 S.E.2d 479 (N.C. App. Ct. 1985)). The behavior must be more than "mere insults, indignities, threats… and… plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986). It is a question of law for the Court to decide whether the plaintiff has alleged an action that could reasonably be considered extreme and outrageous. *Id.* at 121.

In North Carolina, the bar for extreme and outrageous conduct is a "stringent one." *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 866 (M.D.N.C. 2005) (citations omitted). For example, the North Carolina Court of Appeals stated in one opinion that "sexual battery, standing alone" did not constitute extreme and outrageous behavior. *Wilson v. Bellamy*, 105 N.C. App. 446, 468 (1992)[1]. In another case, one employee subjected fellow employees to cursing, screaming, name calling, and other such actions. *Hogan*, 340 S.E.2d at 123. The North Carolina Court of Appeals found that those actions did not constitute extreme or outrageous conduct. *Id.*

Plaintiff failed to adequately plead extreme or outrageous conduct under North Carolina law in this case. The conduct alleged could certainly be considered unprofessional and stress inducing. However, it does not meet the bar established by the North Carolina courts for extreme and outrageous conduct. This decision is in line with other courts who have also determined actions within the loan servicing industry did not meet the bar for extreme and outrageous conduct. *See,*

---

[1] "We do not condone the conduct alleged here. However, the record before us does not show conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Rather, the record only presents some evidence of a sexual battery, and we are unwilling to hold on this record that a sexual battery, standing alone, constitutes the required extreme and outrageous conduct." *Wilson*, 105 N.C. App. at 468 (internal citations and quotations omitted).

*e.g.*, *Wiggins v. Planet Home Lending, LLC*, No. 5:14-CV-862-D, 2015 WL 3952332, at *9 (E.D.N.C. June 29, 2015); *Houck v. Lifestore Bank*, No. 5:13-CV-66-DSC, 2014 WL 197902, at *4 (W.D.N.C. Jan. 15, 2014). Because Plaintiff failed to plead an essential element of the cause of action, Defendants' Motion to Dismiss Plaintiff's intentional infliction of emotional distress claim is **GRANTED**.

### d. Negligent Infliction of Emotional Distress

Next, Defendants moved to dismiss Plaintiff's negligent infliction of emotional distress claim. In order to state a claim for negligent infliction of emotional distress in North Carolina, a plaintiff must plead "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990) (internal citations omitted). Severe emotional distress is distress that is a "severe and disabling mental or emotional condition which may be generally recognized and diagnosed by professionals trained to do so." *Fox-Kirk v. Hannon*, 142 N.C. App. 267, 273-74 (2001).

Defendants moved to dismiss Plaintiff's negligent infliction of emotional distress claim on the basis that Plaintiff failed to plausibly allege severe emotional distress. The Court disagrees. Plaintiff alleged that she suffered both depression and anxiety. (Am. Compl. ¶43). Depression and anxiety are both "mental conditions" that can be "recognized and diagnosed by professionals trained to do so." *Houck v. Lifestore Bank*, No. 5:13-CV-66-DSC, 2014 WL 197902, at *4 (W.D.N.C. Jan. 15, 2014) (Cayer, J.) (citing *Johnson*, 327 N.C. at 304). Thus, at this stage, Plaintiff has plausibly pled severe emotional distress defeating Defendants' Motion. Therefore, Defendants' Motion to Dismiss Plaintiff's negligent infliction of emotional distress claim is **DENIED**.

### e.  Slander of Title

Defendants next moved to dismiss Plaintiff's slander of title claim. Defendants argue that Plaintiff's claim is barred by the absolute privilege associated with filings or statements made within a court proceeding. *See Fox v. Barrett*, 90 N.C. App. 135, 138 (1988); *Hayes v. Self-Help Credit Union*, No. 1:13-CV-880, 2014 WL 4198412, at *7 (M.D.N.C. Aug. 22, 2014) (*quoting Carswell v. JPMorgan Chase Bank N.A.*, 500 F. App'x 580, 583 (9th Cir. 2012)). Plaintiff failed to respond to Defendants' arguments in her response brief.

The Court agrees with Defendants that the statements upon which Plaintiff predicated her slander of title claim are absolutely privileged. For that reason, Defendants' Motion to Dismiss Plaintiff's slander of title claim is **GRANTED**.

### f.  Unfair and Deceptive Trade Practices

Defendant next moved to dismiss Plaintiff's Unfair and Deceptive Trade Practices claim. Defendant argued that the North Carolina Debt Collection Act ("NCDCA") constitutes the sole remedy for unfair and deceptive acts in the debt collection industry. According to Defendants, Plaintiff only made allegations in the context of debt collection, so Plaintiff's Unfair and Deceptive Trade Practices claim under North Carolina General Statute 75-1.1 ("NCUDTPA") is precluded. Plaintiff argues that she has alleged a plausible claim under the NCUDTPA because she alleged facts outside of the debt collection context.

In North Carolina, the NCDCA "constitutes the sole remedy for unfair and deceptive trade practices in the context of debt collection." *Musenge v. SmartWay of the Carolinas, LLC*, No. 3:15-CV-153-RJC-DCK, 2018 WL 4440718, at *5 (W.D.N.C. Sept. 17, 2018) (Conrad, J.). However, "to the extent that the alleged misconduct is outside the NCDCA, the NCDCA does not foreclose

a separate [NCUDTPA] claim." *Thompkins v. Key Health Med. Sols., Inc.*, No. 1:12-CV-613, 2015 WL 1292228, at *4 (M.D.N.C. Mar. 23, 2015) (Peake, J.).

Here, the Court finds that Plaintiff has alleged actions that are plausibly outside of the debt collection context. While the Court is cognizant that the NCUDTPA claim *may* become precluded by the NCDCA once discovery illuminates all of the facts, at the current stage in the litigation, the facts alleged plausibly give rise to liability outside of the debt collection context. As such, Defendants' Motion is **DENIED** as to the NCUDTPA claim.

### g. Fraud and Negligent Misrepresentation

Defendant next moved to dismiss Plaintiff's fraud and negligent misrepresentation claims. To state a claim for fraud in North Carolina, a plaintiff must allege a:

> (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. An essential element of actionable fraud is that the false representation or concealment be made to the party acting thereon.

*Sain v. Adams Auto Grp., Inc*., 244 N.C. App. 657, 662 (2016) (citations omitted). To state a claim for negligent misrepresentation, a plaintiff must allege that plaintiff (1) justifiably relied, (2) to her detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. *Walker v. Town of Stoneville*, 211 N.C. App. 24, 30 (2011). "As to either tort, however, when the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346 (1999) (internal citations omitted).

Defendants first argue that Plaintiff failed to state a claim for fraud or negligent misrepresentation because the alleged misrepresentations concern future action and not then-existing fact. Plaintiff, however, alleges that Defendants committed fraud by concealing the fact

that the escrow account arrearage could not be capitalized into her principal balance at the time of the LMA. This fact is one that was known to the Defendants at the time the Parties entered into the LMA. Thus, the alleged concealment concerns a then-existing fact rather than a promise for future conduct.

Defendants next argue that Defendants did not prevent Plaintiff from investigating the assertion, and Plaintiff could have learned the true facts via a reasonable inquiry. Plaintiff alleged that Defendants "disguised" the fact that the arrearages could not be capitalized and did not include that fact in the LMA at all.

The Court finds, taking the well-pleaded facts as true, that Plaintiff plausibly pled both a claim for fraud and negligent misrepresentation. The brunt of Defendants' argument is a reasonable inquiry would have yielded the true facts to Plaintiff. Ultimately, Plaintiff will have to prove that she could not have learned the true facts via reasonable inquiry or Defendants prevented her from investigating. At this stage, however, she simply needs to allege as much. *Id.* Plaintiff's allegation that Defendants "disguised" the fact by calling the arrearages "modification transaction costs", a term not contained within the LMA, is sufficient to allege that Defendants' actions prevented Plaintiff from investigating further. For that reason, Plaintiff has stated a plausible claim for both fraud and negligent misrepresentation. Therefore, Defendants' Motion to Dismiss those claims is **DENIED**.

### h. Conversion

Defendants next moved to dismiss Plaintiff's conversion claim. Defendants argue that Plaintiff failed to plead that Defendants wrongfully deprived her of dominion over her property as required under North Carolina law. Plaintiff argues she adequately stated a claim for conversion based upon Defendants' misapplication of her payments resulting in additional fees and charges.

The Court agrees with Defendants that Plaintiff failed to state a claim for conversion. Wrongful deprivation of property is the key element to a conversion claim under North Carolina law. *See Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 532 (2001) (quoting *Gallimore v. Sink*, 27 N.C. App. 65, 67 (1975)). Here, Plaintiff fails to plead wrongful deprivation. Plaintiff pleads that Defendants failed to adequately account for her payments on Plaintiff's account. However, even if Defendants acted appropriately, Plaintiff still would not have had dominion over those funds. Rather, Plaintiff relinquished dominion over those funds when she remitted a payment on her mortgage. As such, Plaintiff cannot allege facts to support wrongful deprivation which defeats her conversion claim. This holding is in line with other decisions from courts within this Circuit. *See, e.g.*, *Campbell v. CitiMortgage, Inc.*, No. 1:11-CV-1017, 2014 WL 4924251, at *9 (M.D.N.C. Sept. 30, 2014), r*eport and recommendation adopted*, No. 1:11-CV-1017, 2015 WL 127818 (M.D.N.C. Jan. 8, 2015) ("[T]here can be no conversion of funds already owed under a loan agreement."). Thus, Defendants' Motion to Dismiss Plaintiff's conversion claim is **GRANTED**.

### i. Mortgage Debt Collection and Servicing Act

Defendants next moved to dismiss Plaintiff's claim under the North Carolina Mortgage Debt Collection and Servicing Act. N.C. Gen. Stat. § 45-90 *et seq.* ("NCMDCSA"). Defendants argue Plaintiff failed to state a claim under this statute for two reasons. First, Defendants argue that Plaintiff failed to allege an actual injury associated with the alleged statutory violations. Second, Defendants argue that Plaintiff failed to comply with the 30-day pre-suit notice requirement.

The Court finds that Plaintiff has stated a plausible claim under the NCMDCSA. First, Plaintiff alleged plausible injury under the statute. The NCMDCSA requires mortgage servicers to

"[p]romptly correct errors relating to the allocation of payments, the statement of account, or the payoff balance identified in any notice from the borrower provided in accordance with subdivision (2) of this section, or discovered through the due diligence of the servicer or other means." N.C. Gen. Stat. § 45-93(3). Here, Plaintiff alleged that Defendants failed to correct errors associated with her account despite several communications from her notifying Defendants of the errors. The continued collection of the payments while assessing more fees associated with the mistakes constitutes actual injury.

Second, Defendants argue that Plaintiff failed to comply with the 30-day pre-suit notice requirement found within North Carolina General Statute Section 45-94. Section 45-94 requires

> at least 30 days before a borrower or a borrower's representative institutes a civil action for damages against a servicer for a violation of this Article, the borrower or a borrower's representative shall notify the servicer in writing of any claimed errors or disputes regarding the borrower's home loan that forms the basis of the civil action.

N.C. Gen. Stat. §45-94. Here, Plaintiff alleged that she sent Defendants numerous letters at least thirty days prior to filing this suit notifying Defendants of the errors on her account. The statute does not require special language. Rather, the statute simply requires notice of the "claimed errors and disputes" which Plaintiff plainly alleged in her Amended Complaint. Because the Court finds that Plaintiff has plausibly pled an action under the NCMDCSA, Defendants' Motion to Dismiss that claim is **DENIED**.

### j. RESPA

Defendant next moved to dismiss Plaintiff's Real Estate Settlement Procedures Act ("RESPA") claim. First, Defendants argue that Plaintiff failed to allege sufficient facts to show that Defendant HSBC was a "servicer" as defined under RESPA. Second, Defendants argue that Plaintiff failed to plead that she submitted qualified written requests as defined under RESPA.

Next, Defendants argue that Plaintiff failed to plausibly allege that Defendants violated the loss mitigation requirements provided for in 12 C.F.R. § 1024.41. Finally, Defendants argue that Plaintiff failed to allege sufficient facts to support damages for the alleged RESPA violation.

First, Defendants argue that Plaintiff did not plausibly plead that Defendant HSBC is a "servicer" as defined under RESPA. RESPA defines servicer as the "person responsible for servicing the loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). Servicing is defined as

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). After review of the Amended Complaint and the exhibits attached thereto, the Court finds that Plaintiff has plausibly alleged, at this stage in the proceeding, that Defendant HSBC is a servicer within the meaning of RESPA. As such, Defendants' Motion to Dismiss the RESPA claim against Defendant HSBC on this ground is **DENIED**.

Second, Defendants argue that Plaintiff failed to plead that she submitted qualified written requests ("QWR") as defined under RESPA. A QWR is a

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Here, Plaintiff alleged that she submitted QWRs to Defendants who failed to respond within the statutory time limit. While a conclusory allegation that a written request qualifies

as a QWR would almost certainly not meet the pleading requirements of *Iqbal*[2], Plaintiff went on to plead that the requests "request[ed] an accounting of *her* mortgage loan." (Am. Compl. ¶ 261) (emphasis added). Additionally, Plaintiff pled that the QWR had "sufficient information for Defendants to identify the loan that was the subject of the request." (*Id.* at ¶ 262.). While this language may not be the model of clarity, Plaintiff has adequately pled that the alleged QWRs contained her name, identifying information for the loan, and requested an accounting of that loan. The Court finds that the Plaintiff has plausibly pled that her written requests qualify as QWRs under RESPA. Thus, Defendants' Motion to Dismiss Plaintiff's RESPA claim on this ground is **DENIED**.

Next, Defendants argue that Plaintiff failed to plausibly allege that Defendants violated the loss mitigation requirements provided for in 12 C.F.R. § 1024.41. Title 12 Code of Federal Regulations Section 1024.41 governs the relationship between a lender and borrower in the foreclosure context when the borrower requested loss mitigation options. 12 C.F.R. § 1024.41. Amongst other requirements, 12 C.F.R. § 1024.41 prevents a lender from engaging in "dual tracking"- proceeding with a foreclosure proceeding while also evaluating a loss mitigation application. 12 C.F.R. § 1024.41(g). Here, Plaintiff claims that Defendants violated RESPA by continuing with the foreclosure proceedings instead of adequately implementing the LMA.

On this point, Plaintiff has failed to state a claim. The regulation cited prevents lenders from considering an application for loss mitigation while also commencing a foreclosure proceeding. That is not what is alleged to have happened here. Plaintiff does not allege that Defendants considered her application at the same time they proceeded with a foreclosure action. Rather, Plaintiff alleges that Defendants accepted her application, the Parties entered into a LMA,

---

[2] *See McLaughlin v. Nationstar Mortg. LLC*, No. 1:18-CV-593, 2018 WL 4356754, at *5 (M.D.N.C. Sept. 12, 2018) ("A conclusory assertion that a communication is a 'qualified written request,' without alleging its date, contents, subject matter, or other pertinent information, is not enough.").

and then Defendants failed to properly implement that agreement. That situation is not what 12 C.F.R. § 1024.41 looks to address. To be sure, the regulation states the following:

> Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

12 C.F.R. § 1024.41(a). Thus, by its very terms, 12 C.F.R. § 1024.41 does not apply to the situation at hand. Therefore, Defendants' Motion to Dismiss Plaintiff's RESPA claim as it pertains to Defendants' alleged failure to follow loss mitigation requirements is **GRANTED**.[3]

Finally, Defendants argue that Plaintiff failed to allege sufficient facts to support damages for the alleged RESPA violation. Defendants argue that Plaintiff failed to allege facts sufficient to form a causal link between Defendants' alleged violation of RESPA and Plaintiff's injuries. Plaintiff, however, has pled sufficient facts to give rise to a plausible claim for actual damages under RESPA. Because the Court finds that Plaintiff has alleged sufficient facts to give rise to a plausible claim for actual damages, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's RESPA claim on this ground.

Defendant also argued that Plaintiff failed to plead a pattern or practice sufficient to give rise to statutory damages under RESPA. RESPA authorizes statutory damages of up to $2,000 if a Plaintiff can show a pattern or practice of violating RESPA. 12 U.S.C. § 2605(f)(1)(B). In support of her pattern or practice allegation, Plaintiff alleged that the Office of the Comptroller General issued an order against Defendant HSBC during the time in which errors were made on Plaintiff's account. (Am. Compl. ¶ 167). Additionally, fifty Attorneys General from states across the United States and the District of Columbia brought suit against Defendant HSBC asserting "acts the same

---

[3] Apparently conceding that this claim should be dismissed, Plaintiff did not argue against its dismissal in her response in opposition.

as or similar to the allegations Plaintiff as [sic] asserted in her Amended Complaint." (*Id.* ¶169). Plaintiff alleges that Defendant HSBC ultimately agreed to pay a settlement amount for the "alleged negligent acts." (*Id.* ¶ 170).

Defendants argue these assertions are too vague to support a pattern or practice claim. According to Defendants, Plaintiff failed "to allege any details regarding such lawsuits, or allege that the lawsuits resulted in a judicial determination that HSBC or PHH violated RESPA." (Doc. No. 42, p. 6). The Court finds that is not the case. Plaintiff alleged that Defendant HSBC paid out a settlement for its alleged negligent acts that were the same or similar to the acts complained of by Plaintiff. While more factual development of that accusation may show that Defendant HSBC made that payment accepting no fault, at this stage Plaintiff's allegation gives rise to a plausible inference that Defendants have a pattern or practice of violating RESPA. As such, Defendants' Motion to Dismiss the RESPA pattern or practice statutory damages claim is **DENIED**.

### k. North Carolina Debt Collection Act

Defendants next argue that Plaintiff failed to state a claim under the NCDCA because Plaintiff failed to plead facts showing that Defendants' communications were likely to mislead her regarding her loan. The Court disagrees. Plaintiff pled that despite making payments on time, Defendants continued to show her account with growing arrearages that were not explained. Additionally, Defendants placed Plaintiff's payments in a suspense account without informing Plaintiff as her amount owed continued to rise. Defendants' argument that Plaintiff "could not have been deceived as to whether her mortgage payments had been made" is thus unpersuasive as a look at her statements would lead her to believe that her payments, in fact, were not being paid. Thus, Plaintiff has adequately stated a claim under the NCDCA, and Defendants' Motion to Dismiss the claim is **DENIED**.

### l.    Fair Debt Collection Practices Act

Defendants next moved to dismiss Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim on the basis that Defendants are exempt from the statute. Courts around this Circuit, including this Court, have found that "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Orban v. Nationwide Tr. Servs., Inc.*, No. 5:12-CV-00016-RLV-DS, 2014 WL 6476235, at *6 (W.D.N.C. Nov. 19, 2014) (citing *Scott v. Wells Fargo Home Mortgage Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. Jan. 14, 2003) *aff'd sub nom. Scott v. Wells Fargo & Co.*, 67 F. App'x 238 (4th Cir. 2003); *Boyter v. Bank of Am. Corp.*, 3:12–CV–189–RJC–DCK, 2012 WL 5872793 (W.D.N.C. Oct. 9, 2012) *report and recommendation adopted*, 3:12–CV–189–RJC–DCK, 2012 WL 5872752 (W.D.N.C. Nov. 20, 2012) (quoting *Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 647–48 (E.D. Va. May, 13 2010) (internal citations omitted)); *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x. 458 (11th Cir. 2009) ("several courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA ....")). These cases stand for the proposition that mortgagors and mortgage servicers are not "debt collectors" under the FDCPA. Because Defendants are mortgagors and mortgage servicers, Plaintiff failed to state a claim under the FDCPA against Defendants. As such, Defendants' Motion to Dismiss Plaintiff's FDCPA claim is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion as to Plaintiff's claims against 21st Mortgage and Christiana Trust is **GRANTED**. Additionally, Defendants' Motion as to Plaintiff's claims against Defendants HSBC and PHH for intentional infliction of emotional distress, slander of title,

conversion, failure to follow loss mitigation requirements under RESPA, and the Fair Debt Collection Act is **GRANTED**. Defendants' Motion to Dismiss Plaintiff's claims against Defendant HSBC and PHH for negligent servicing, negligent infliction of emotional distress, unfair and deceptive trade practices, fraud, negligent misrepresentation, Mortgage Debt Collection and Servicing Act violations, Plaintiff's remaining RESPA claims, and claims under the North Carolina Debt Collections Practices Act is **DENIED**.

The Clerk is directed to terminate 21st Mortgage and Christiana Trust from this case.

**SO ORDERED**.

Signed: June 21, 2019

Graham C. Mullen
United States District Judge